HERMAN ELLIS, Respondent, *v.* LEOPOLD MILLER et al., Appellants.

1. CONTRACT TO FURNISH GOODS — MEASURE OF DAMAGES FOR BREACH OF. A contract to furnish at least $1,000 worth of cigarettes a year, plus two per cent of that sum, is implied by an agreement for a term of five years, executed between a cigarette manufacturer and certain dealers, providing that the former shall allow the latter $1,000 per annum to be deducted in equal monthly installments from current bills, and shall make a further allowance of two per cent below the price given to any other house in the states of New York and New Jersey on a certain brand of cigarettes, in consideration of which the dealers bind themselves to "push" that brand of cigarettes and not to push other brands, and the measure of damages for the breach of such contract by the manufacturer's refusal to furnish the cigarettes is the difference between the amount the dealers were to receive in case they performed it and the cost of performance.

2. APPEAL — DISMISSAL OF COUNTERCLAIM ON THE GROUND THAT THE FACTS STATED DO NOT CONSTITUTE A CAUSE OF ACTION. Where, in an action by the manufacturer for a balance due on account of goods sold and delivered, the dealers interposed a counterclaim, alleging a breach of the plaintiff's implied contract to furnish them with goods, a dismissal of the counterclaim, on the ground that the facts stated did not constitute a

cause of action, after defendants had opened their case to the jury, had entered upon their evidence and had shown that the plaintiff had sold and transferred his business, is erroneous, where the motion to dismiss was not based upon any insufficiency of the evidence, but upon the ground that there was no such implied contract, and the record does not show that the defendants had closed their case when the motion was granted.

*Ellis* v. *Miller*, 22 App. Div. 33, reversed.

(Argued October 31, 1900; decided November 16, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 18, 1897, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*M. S. Guiterman* for appellants. The contract contains reciprocal obligations based upon a sufficient consideration binding on both parties. (*K. B. & Co.* v. *F. Mfg. Co.*, 78 Iowa, 679; *Rapoloritz* v. *A. T. Co.*, 73 Hun, 87.) When the language of a contract is obscure or doubtful, and does not furnish conclusive evidence of its meaning, the surrounding circumstances will be regarded, and the intention of the parties becomes a mixed question of law and of fact. (*Dodge* v. *Gardiner*, 31 N. Y. 239; *E. Nat. Bank* v. *Kauffman*, 93 N. Y. 273; *Smith* v. *Kruze*, 114 N. Y. 190; *Woolsey* v. *Funke*, 121 N. Y. 87; *Robertson* v. *O. E. Co.*, 146 N. Y. 20; *Reynolds* v. *C. F. Ins. Co.*, 47 N. Y. 597; *Merriam* v. *U. S.*, 107 U. S. 437; *Gardiner* v. *Clark*, 17 Barb. 538; *F. Nat. Bank* v. *Dana*, 79 N. Y. 108; *Camp* v. *Trainor*, 143 N. Y. 649.) The practical interpretation put upon the instrument by the parties should prevail. (*O'Hara* v. *Harmon*, 14 App. Div. 167; *B. P. Co.* v. *N. Y. M. School*, 15 App. Div. 417.) It is an implied condition of every contract that the party to be bound by it will do whatever acts are necessarily incidental to the performance of the contract, with a reasonable interpretation of its provisions. (*B. T. Co.* v. *M. Mfg. Co.*, 1 App. Div. 507; *Booth* v. *C. M. Co.*, 74 N. Y. 21; *V. P.*

*Fabricken* v. *Rogers*, 52 App. Div. 529; *Barton* v. *McLean*, 5 Hill, 256; Lawson on Cont. § 55.)

*Theron G. Strong* for respondent. The plaintiff was not in default with respect to the performance of the contract. (*Vandegrift* v. *C. E. Co.*, 161 N. Y. 435; *Ziehen* v. *Smith*, 148 N. Y. 558; *Higgins* v. *Eagleton*, 155 N. Y. 466; *Devlin* v. *Mayor, etc.*, 63 N. Y. 8; *R. L. Co.* v. *S. & P. P. Co.*, 135 N. Y. 209.) No covenant to sell or purchase any cigarettes should be implied as it is impossible to infer from the agreement, as a basis for an implied covenant to buy or sell, what quantity of cigarettes was in the contemplation of the parties. (*Newell* v. *Wheeler*, 36 N. Y. 244; *C. & G. E. R. Co.* v. *Dane*, 43 N. Y. 240; *Arnot* v. *P. & E. C. Co.*, 68 N. Y. 565; *Hornbostel* v. *Kinney*, 110 N. Y. 94; *H. C. Co.* v. *P. C. Co.*, 8 Wall. 276.) A covenant to sell cannot be implied as the writing and the implication would not constitute separately or together a valid agreement of bargain and sale under the Statute of Frauds. (Brown on Statute of Frauds, § 385; Benj. on Sales [6th ed.], 211; *May* v. *Ward*, 134 Mass. 127; *Mentz* v. *Newitter*, 122 N. Y. 491; *Drake* v. *Seaman*, 97 N. Y. 230; *Cheever* v. *Schall*, 87 Hun, 32; *Wright* v. *Weeks*, 25 N. Y. 153.)

CULLEN, J. The plaintiff sued for a balance due on account of goods sold and delivered. The answer admitted the claim, but set up two counterclaims for damages for plaintiff's breach of an agreement under which the goods were sold. The plaintiff was a manufacturer of cigarettes. The defendants were large dealers and jobbers in cigarettes and other manufactures of tobacco. After having had business together for some time the parties executed this written instrument: "This agreement, made this 18th day of September, one thousand eight hundred and ninety-four, between H. Ellis & Company, of Baltimore, Maryland, parties of the first part, and Leopold Miller & Sons, of New York, parties of the second part: Witnesseth: That the parties of the first part are to

make an allowance to the parties of the second part of one thousand dollars per annum, said amount to be deducted in equal monthly installments ($83.33) from current bills.   Parties of the first part also bind themselves to make a further allowance of two (2%) per cent below the price given to any other house in the States of New York and New Jersey on the ' Recruit ' cigarettes.   In consideration of the above, the parties of the second part also bind themselves not to push any nickel package of all tobacco cigarettes made of bright tobaccos ; and they further bind themselves not to sell or offer for sale — directly or indirectly — the said ' Recruit ' cigarette for less than $3.60, less 2%, per thousand.   And they also agree to push and do all in their power to increase the sale of the said ' Recruit ' cigarettes.   This agreement to remain in force from five years from the above date.   H. Ellis & Co. Leopold Miller & Sons.   Witness : Abraham De Lemos." The first counterclaim was allowed by the plaintiff upon the trial.   The second counterclaim alleged that the defendants performed the contract above recited, but that the plaintiff refused to perform the same to the defendants' damage in the sum of twenty thousand dollars.   It appears from the evidence so far as it was developed when the court terminated the trial, that in the spring of 1895 the plaintiff sold and transferred his business to the American Tobacco Company.   The appellants contend that on such sale the plaintiff notified them that he would no longer supply them with goods and this is the breach complained of.   After the defendants' counsel had opened his case to the jury the plaintiff moved to dismiss this counterclaim on the ground that the facts stated did not constitute a cause of action.   The motion was denied and the defendants entered upon their evidence.   When the trial had proceeded to some extent the court stated to the defendants' counsel that it did not see that the second counterclaim could be maintained.   After giving its reasons for that determination it granted " the motion made at the beginning of the case on behalf of the plaintiff," to which proper exception was taken.   A verdict was directed for the plaintiff for his claim

less the amount of the defendants' first counterclaim. To this also exception was taken. There is nothing in the record to show that at the time the court intervened the defendants had rested their case.

This judgment has been affirmed on appeal by a divided court. The ground on which the action of the trial court proceeded was that under this agreement there was no obligation upon the part of the plaintiff to sell any goods to the defendants, or any obligation upon the part of the defendants to buy any goods; that its only effect was to prescribe the terms on which the goods should be sold in case the plaintiff should be willing to sell and the defendants be willing to buy. This was in effect holding that the agreement was such only in name and form. For if it imposed no duty to buy on the one part or to sell on the other, it is plain that on any subsequent sales either party might require such terms and conditions as he saw fit. Two of the learned judges of the Appellate Division took the same view of this agreement as that held by the trial court. Mr. Justice INGRAHAM, while repudiating this construction of the instrument, thought that the transfer of the plaintiff's business to the tobacco company was not of itself a breach of the agreement, since the plaintiff's obligations could be discharged by his assignee, and that the defendants had failed to prove that the plaintiff refused to carry out his contract. For this reason he concurred in an affirmance of the judgment. Mr. Justice PATTERSON wrote for the minority, holding the written agreement imposed effective and substantial obligations on the parties.

In this latter view we concur. The parties certainly thought they had made a contract, for they not only signed the written instrument, but took pains to have it witnessed. Courts should not be astute to so construe it as to render it nugatory. Definite obligations were imposed upon the defendants. A violation of their negative covenant not to "push" any nickel package of bright tobacco cigarettes could be restrained by injunction, and while it is possible that the courts would not compel a specific performance of their affirmative covenant to

"push" the sale of the "Recruit" cigarettes which the plaintiff was manufacturing, still, for the breach of that covenant damages could be recovered in an action at law. On the other side, the plaintiff entered into a positive obligation to allow the defendants a thousand dollars a year to be deducted in equal monthly installments from the current bills. This necessarily imported an agreement on the plaintiff's part to sell the defendants at least one thousand dollars worth of cigarettes a year; for, otherwise, it would be impossible to credit the defendants with that amount on their purchases. The plaintiff also agreed to charge the defendants for goods two per cent less than the current price charged to other dealers. This would increase the annual allowance by that percentage, in other words, make it $1,020. Doubtless both parties contemplated that the business would be continued as it had been previously carried on, and that it would be to the interest of the plaintiff to furnish the defendants as many goods as they could sell, but there is no agreement to that effect, and we think the obligation of the plaintiff is confined within the limit stated. Under this view of the contract the measure of damages is plain; that is, the difference between the amount the defendants were to receive in case they performed the contract and the cost of performance. If it should be proved that the defendants' profits on the sales made by them, above the price they were required to pay for the goods, would equal or exceed the cost of performance, then no deduction should be made.

We agree with Mr. Justice INGRAHAM that the transfer and sale of the plaintiff's business did not *per se* constitute a breach of the contract (*Vandegrift* v. *Cowles Engineering Co.*, 161 N. Y. 435), but the point on which he disposed of the case in our opinion is not presented by the record. The motion granted by the court was that made by the plaintiff at the opening of the defendants' case, a motion based not on any insufficiency of evidence, but on the ground that the instrument imposed no obligation on the plaintiff to furnish goods. As already stated, the record does not show that the defend-

ants had closed their case, and, after the opinion expressed by the court, it would have been idle for them to adduce further testimony.

The judgment should be reversed and a new trial granted, costs to abide the event.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT and WERNER, JJ., concur; LANDON, J., concurs in result.

Judgment reversed, etc.